IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO.  09-00023 - KD |
| v. | * | |
| | * | |
| BRIAN DOUGLAS TEASLEY | * | |

### PLEA AGREEMENT

The defendant, **BRIAN DOUGLAS TEASLEY**, represented by his counsel, and the

United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the

Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1.     The defendant understands his rights as follows:

    a.     To be represented by an attorney;

    b.     To plead not guilty;

    c.     To have a trial by an impartial jury;

    d.     To confront and cross-examine witnesses and to call witnesses and produce

        other evidence in his defense;

    e.     To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2.     The defendant waives rights b through e, listed above, and pleads guilty to Count 2

of the Indictment, charging a violation of 21 United States Code, Section 846, conspiracy to

1

manufacture methamphetamine.

3.     The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury for any false statements he makes intentionally in this plea of guilty.

4.     The defendant expects the Court to rely upon his statements here and his response to any questions that he/she may be asked during the guilty plea hearing.

5.     The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his/her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.     The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence.

7.     The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s) beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge(s). The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his/her attorney.

8.     A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and

2

correct.

9.     This plea of guilty is freely and voluntarily made and is not the result of force,

threats, promises, or representations apart from those set forth in this Plea Agreement. There

have been no promises from anyone as to the particular sentence that the Court may impose. The

defendant avers that he is pleading guilty because he knows that he is guilty.

## PENALTY

10.    The maximum penalty the Court could impose as to Count 2 of the Indictment is:

    1.     Imprisonment for a period of a minimum mandatory 5 years to a maximum of

       40 years;

    2.     A fine not to exceed $2,000,000;

    3.     A term of supervised release of 5 years, which would follow any term of

       imprisonment. If the defendant violates the conditions of supervised release,

       he  could be imprisoned for the entire term of supervised release;

    4.     A mandatory special assessment of $100.00; and

**However, based upon the Enhancement Information, filed by the United States in the case, the defendant is subject to a minimum mandatory ten years imprisonment to a maximum of life imprisonment, on  Count Two, a fine not to exceed $4,000,000.00; a term of supervised release of at least 8 years, which would follow any term of imprisonment and a mandatory special assessment of $100.00.  If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release.**

## SENTENCING

11.    The Court will impose the sentence in this case. The United States Sentencing

3

Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

12. The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

13. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14. Both the defendant and the United States are free to allocute fully at the time of sentencing.

15. The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the .

4

## UNITED STATES' OBLIGATIONS

16.     The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss Count 1, and 3 through 6 at sentencing. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

17.     The United States will recommend to the Court that the defendant be sentenced to the **lower end of the sentencing guideline range as determined by the Court**.

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

18.     The defendant acknowledges that he is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

19.     With the limited exceptions noted below, the defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255. Any sentence so imposed includes any determination or sentence imposed in a supervised release or probation revocation proceeding.

20.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

      a.     Any punishment imposed in excess of the statutory maximum;

      b.     Any punishment that constitutes an upward departure from the guideline range; or

5

      c.   A claim of ineffective assistance of counsel.

21.   In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

## VIOLATION OF AGREEMENT

22.   The defendant understands that if he violates any provision of this agreement, the United States will be free from any obligations imposed by this agreement and will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the 6th Amendment and/or Speedy Trial Act.

23.   In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his/her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

24.   This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

DEBORAH J. RHODES
UNITED STATES ATTORNEY

Date:_____

GEORGE F. MAY
Assistant United States Attorney MAYG0534

6

I have consulted with my counsel and fully understand all my rights with respect to the offense(s) charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 4/20/09

BRIAN DOUGLAS TEASLEY
DEFENDANT

I am the attorney for the defendant. I have fully explained his/her rights to him with respect to the offense(s) charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him  To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 4/21/09

BARRE C. DUMAS
Counsel for BRIAN DOUGLAS TEASLEY
Defendant

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | **CRIMINAL NO.  09 -00023- KD** |
| v. | * | |
| | * | |
| **BRIAN DOUGLAS TEASLEY** | * | |

## FACTUAL RESUME

The defendant, **BRIAN DOUGLAS TEASLEY**, admits the allegations of Count 2 of the

Indictment.

## ELEMENTS OF THE OFFENSE

**TEASLEY** understands that, in order to prove a violation of Title 21, United States

Code, Section 846, as charged in Count 2 of the Indictment, the United States must prove:

1.      That two or more persons in some way or manner, came to a mutual

understanding to manufacture methamphetamine.

2.      That the defendant knowingly and willfully became a member of such conspiracy.

## OFFENSE CONDUCT

Defendant, **BRIAN DOUGLAS TEASLEY**, admits in open court and under oath that

the following statement is true and correct and constitutes evidence in this case.

That from on or about January 1, 2008 to on or about January 29, 2009,  in Mobile,

Alabama, and elsewhere, the defendant knowingly and willfully conspired with the co-defendant,

Chantelle Elizabeth Clark Zoghby, and with other persons to manufacture methamphetamine, a

Schedule II controlled substance.  The quantity of methamphetamine involved in the conspiracy

exceeded 50 grams.

1

On December 5, 2008, Agent Kevin Wright with Alabama Alcoholic Beverage Control Bureau, Enforcement Division and Sgt. Steve Kirchharr and Cpl. Dawn Alfonsi with the Mobile County Sheriff's Office Narcotics and Vice Unit, all met with two reliable confidential informants in reference to the defendant selling methamphetamine in the Mobile area. Informant #1 advised agents they could purchase methamphetamine from the defendant at his residence in Mobile County. Informant #1 further advised they knew the defendant well and could easily identify him.

Both informants and their vehicle were searched for contraband and none was found. Informant #1 was given $160.00 in buy money with the serial numbers prerecorded. ($100.00 of the money was provided by ABC Enforcement Division and $60.00 of the money was provided by the Mobile County Sheriff's Office Narcotics and Vice Unit.) Informant #2 was equipped with an audio and video recording device. The informants were followed to the residence. Both informant's entered, and exited a short time later and were followed back to a prearranged location.

Once back at the prearranged location, Informant #1 handed officers two small baggies containing methamphetamine and advised officers they had purchased the substance, believing it to be methamphetamine from the defendant. Informant #1 added they had used the buy-money to make the purchase. The methamphetamine weighed approximately 2.15 grams.

On January 20, 2009, Agent Kevin Wright with ABC Enforcement Division, and Cpl. Dawn Alfonsi with the Mobile County Sheriff's Office Narcotics and Vice Unit, conducted an interview with the co-defendant Chantelle Clark Zoghby concerning her knowledge of illegal

2

narcotics activity. Zoghby was read her rights per Miranda, which she advised she understood, and Zoghby advised she wished to speak with investigators.

Zoghby stated she had been using methamphetamine for about eight months and had first "tried it with some friends". She had been selling methamphetamine and crystal methamphetamine or "ice" since early 2008.

Zoghby stated her main "ice" supplier was a Hispanic male who she knew as "Alberto." Zoghby stated that approximately a year ago, "Alberto", a family friend, was doing work for her mom at her mom's residence on Hollinger's Island. At first Zoghby stated she got a few Lortabs from Alberto, then he came to her with some "ice" and told her she could make a lot of money selling it. Alberto fronted Zoghby 1 ounce of crystal methamphetamine ("ice") for $2,200.00.

Zoghby stated she got between 1 and 2 ounces of "ice" each time on about 10 occasions. Zoghby further stated she believed Alberto got sent back to Mexico. Zoghby further explained that each time she got the "ice", she paid some of the money owed, but not all. One day Alberto had come to her and introduced her to "his people" because he said she owed him $10,000.00 and Alberto wanted her to pay "his people" the money so he could go back to Mexico.

Zoghby stated Alberto introduced her to "Maud Rico", the driver, and Francisco, who she believed was the source of supply for the "ice." Zoghby admitted to calling Alberto in Mexico because he wanted her to send money for the "Ice". Zoghby admitted she sent approximately $3,000.00 to Alberto in Mexico on one occasion, and sent money to "Francisco", in Atlanta on two occasions. The defendant also admitted that she had also written checks for $5000.00 from a checking account to pay her drug debt. The defendant further advised that her mother had also given her $5,000.00 to pay toward her drug debt.

When Alberto left, the defendant advised she began calling "Maud Rico" in Atlanta for the "ice". Zoghby advised she met "Maud Rico" in Atlanta and purchased "ice" on about 3 or 4 occasions and got about 3 ounces of "ice" each time. Each time she would take $3,000.00 but would keep an outstanding balance because they would charge her $1,600.00 per ounce. The defendant stated she currently owes "Maud Rico" about $4,800.00. "Maud Rico" also came to Mobile about 1 time per week from about the end of May of 2008 until just recently bringing her "ice". The defendant stated "Maud Rico" had delivered between 2 and 8 ounces of "ice" to her on at least 20 occasions.

The defendant further stated that she had just gone to Atlanta Friday night (January 16, 2009) /Saturday morning (January 17, 2009) and had gotten 2 ounces of "ice" from "Maud Rico". The defendant advised "Maud Rico's" phone number was (818) xxx-xxxx (redacted), which she retrieved from her Blackberry cell phone.

The defendant stated when she first started getting ice in the beginning from "Alberto", she had "fronted" it to different people. Among them was the defendant **BRIAN DOUGLAS TEASLEY**, R. S., S. D., "Nick", M. T., and L. G. (full names redacted).

Zoghby further stated she was a good friend of the defendant **BRIAN DOUGLAS TEASLEY** and the two had known each other since high school at Theodore. Zoghby stated she had purchased methamphetamine from **BRIAN DOUGLAS TEASLEY** on approximately 10 or 15 occasions and she had taken him some pseudoephedrine pills, which she had traded him for methamphetamine on a few occasions. Zoghby stated she had "been swapped" the pills herself in exchange for methamphetamine. On each occasion Zoghby stated she had purchased

4

methamphetamine from **BRIAN DOUGLAS TEASLEY**, Zoghby stated she obtained approximately 1 or 2 grams.

Zoghby further stated she mostly sold "ice" to **BRIAN DOUGLAS TEASLEY**, and only got methamphetamine from him when she didn't have any and needed some for personal use. In the beginning of their drug dealing relationship, Zoghby stated the defendant got "8-balls" (3 ½ grams) of "ice" on about 5 occasions. Zoghby stated he then bought a gram or so on about 15 or 20 occasions. Zoghby added, "He didn't need mine 'cause he could make his own." Zoghby further stated that around late 2008, the defendant rode with her to Atlanta to purchase the "ice" and following her purchase, the defendant bought approximately ½ ounce of the "ice" from Zoghby for $750.00.

On or about December 12, 2008, a CI purchased approximately 2.0 grams of methamphetamine from the defendant at his residence in Mobile County, Alabama.

On or about December 17, 2008, a search warrant was executed at the defendant's residence. He was found to be in possession of a total of approximately 7 grams of methamphetamine, 4,800 mg of pseudoephedrine pills and ammunition. After Miranda, the defendant admitted to being a methamphetamine user.

The defendant manufactured methamphetamine at locations to include his home in Mobile County as well as at a residence on Dauphin Island. The defendant received pseudoephedrine pills from "pill-shoppers" and also "pill-shopped" for pseudoephedrine to be used to manufacture methamphetamine. The defendant admits that he manufactured in excess of 50 grams of methamphetamine over the course of the conspiracy. However, the United States and the defendant do not have an agreement as to the total amount of methamphetamine and

5

pseudoephedrine attributable to the defendant for purposes of relevant conduct and both parties
are free to make their respective positions known at sentencing.

Respectfully submitted,

AGREED TO AND SIGNED.

DEBORAH J. RHODES
UNITED STATES ATTORNEY

Date: 4/15/09

GEORGE F. MAY
Assistant United States Attorney
MAYG0534

Date: 4/20/09

BRIAN DOUGLAS TEASLEY
Defendant

Date: 4/21/09

BARRE C. DUMAS
Counsel for Defendant

6